Form 2400A, Reaffirmation Documents                                                                      Page 1

---

**Fill in this information to identify your case:**

| Debtor 1 | **Chance Dustin Sims** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the Southern District of Mississippi (Gulfport)

| Case Number (if known) | **26-50207-KMS** |
|---|---|
| | **Chapter 7** |

---

Official Form 427

# Cover Sheet for Reaffirmation Agreement                                            12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

**Part 1:** Explain the Repayment Terms of the Reaffirmation Agreement

1. Who is the creditor?

   **Renasant Bank, successor in interest by merger to The First Bank**
   Name of the creditor

2. How much is the debt?

   On the date that the bankruptcy case is filed          $206,954.48

   To be paid under the reaffirmation agreement          (plus accrued interest after petition)

   ____$_ Per month for ___ months

   Borrowers' payment schedule consists of the following: Original terms of Promissory Note ("Note") (variable rate loan) 60 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2022, with an initial interest rate of 5.750% per annum; 179 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2027 with interest calculated on the unpaid principal balances using an interest rate based on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently at 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum; and one principal interest payment of $1,554.51 on September 5, 2042 with interest calculated on the unpaid principal balances using an interest rate based on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently at 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum.

   THE ORIGINAL TERMS ARE BEING MODIFIED THROUGH THIS AGREEMENT. NOTE IS CURRENTLY PAST DUE $10,884.51 REPRESENTING THE JANUARY 5, 2026, THROUGH JULY 5, 2026 PAYMENTS. TO CURE THE DELINQUENCY THE DEBTOR WILL PAY TWO REGULAR PAYMENTS EACH MONTH BEGINNING WITH THE PAYMENT DUE AUGUST 5, 2026, AND CONCLUDING WITH THE PAYMENT DUE FEBRUARY 5, 2027. REGULAR NOTE PAYMENTS ARE $1,554.93 EACH. THUS, FOR THE PERIOD AUGUST 5, 2026, THROUGH FEBRUARY 5, 2027, THE DEBTOR'S TOTAL MONTHLY OBLIGATION TO RENASANT SHALL BE $3,109.86. ASSUMING THE DEBTOR MAKES TWO PAYMENTS EACH MONTH FOR 7 CONSECUTIVE MONTHS BEGINNING AUGUST 2026, THEN THE DEBTOR'S PAYMENT OBLIGATIONS HEREUNDER SHALL REVERT TO THE NORMAL MONTHLY PAYMENT AMOUNT OF $1,554.93 EFFECTIVE WITH THE MARCH 5, 2027 NOTE PAYMENT. TO THE EXTENT THAT THE INTEREST RATE ON THE NOTE CHANGES DURING THE TERM OF THIS REAFFIRMATION AGREEMENT, THEN THE ACTUAL AMOUNT OF THE NOTE PAYMENT BASED ON ANY ADJUSTMENT IN THE INTEREST RATE SHALL CONTROL.

3. What is the Annual Percentage Rate (APR) of interest? (See

   Before the bankruptcy case was filed          5.750%

40626810v1

Form 2400A, Reaffirmation Documents                                                                    Page 2

**Bankruptcy Code §524(k)(3)(E).)**

Under the reaffirmation agreement     **5.750%**   ☒ **Fixed rate / Adjustable rate**

4. **Does the collateral secure the debt?**
   ☐ No   ☒ Yes

   Describe the collateral: Real Property located at 440 Old Highway 15 South, Ellisville, MS 39437, including one (1) 2002 Southern Manufactured Home bearing Serial Number #DSEAL15148ABC

   Current market value: $390,000.00 (per Schedule A/B)

5. **Does the creditor assert that the debt is nondischargeable?**
   ☒ No
   ☐ Yes   Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.

**Income and expenses reported on Schedules I and J**

6a. Combined monthly income from lines 12 of Schedule I    $ _____

6b. Monthly expenses from line 22c of Schedule J    —$ _____

6c. Monthly payments on all reaffirmed debts not listed on Schedule J    —$ _____

6d. **Scheduled net monthly income**    $ _____

Subtract lines 6b and 6c from 6a if the total is less than 0, put the number in brackets

**Income and expenses stated on the reaffirmation agreement**

6e. Monthly income from all sources after payroll deductions    $ _____

6f. Monthly expenses    —$ _____

6g. Monthly payments on all reaffirmed debts not included in monthly expenses    —$ _____

6h. **Present net monthly income**    $ _____

Subtract lines 6f and 6g from 6e if the total is less than 0, put the number in brackets

7. **Are the income amounts on lines 6a and 6e different?**
   ☐ No
   ☐ Yes.   Explain why they are different and complete line 10. _____

8. **Are the expense amounts on lines 6b and 6f different?**
   ☐ No
   ☐ Yes.   Explain why they are different and complete line 10. _____

9. **Is the net monthly income in line 6h less than 0?**
   ☐ No
   ☐ Yes.   A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

10. **Debtor's certification about lines 7-9**

    If any answer on lines 7-9 is Yes, the debtor must sign here.

    I certify that each explanation on lines 7-9 is true and correct.

    **Chance D. Sims**

    If all the answers on lines 7-9 are No, go to line 11.

11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?**
    ☐ No
    ☐ Yes.   Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
       ☐ No
       ☐ Yes.

**Part 2:   Sign Here:**

Form 2400A, Reaffirmation Documents                                                                    Page 3

Whoever fills out this form      I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the
must sign here.                   parties identified on this *Cover Sheet for Reaffirmation Agreement.*

_____        Date    __8/5/2026_____
Signature                                                               MM / DD / YYYY

**James P. Wilson, Jr. (MSB 10783)**_____
Printed Name

Check one:

☐ No      Debtor or Debtor's Attorney
☒ Yes.    Creditor or Creditor's Attorney.

Official Form 427                        **Cover Sheet for Reaffirmation Agreement**                        Page 2

40626810v1

Form 2400A, Reaffirmation Documents                                                                                                    Page 5

<div style="border:1px solid">
Check one.
☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
*See Debtors' Statement in Support of Reaffirmation,*
*Part II below, to determine which box to check.*
</div>

## UNITED STATES BANKRUPTCY COURT
### Southern District of Mississippi (Gulfport)

In re      **Chance Dustin Sims**                                      Case No.      **26-50207-KMS**

Chapter                          **7**

### REAFFIRMATION DOCUMENTS

**Name of Creditor:**    **Renasant Bank, successor in interest by merger to The First Bank**

☐ Check this box if Creditor is a Credit Union.

## PART I.  REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision.  Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions and definitions found in Part V of this form.**

A.     Brief description of the original agreement being reaffirmed:  **Promissory Note, Deed of Trust, and Certificate of Title (see attached)**

B.     *AMOUNT REAFFIRMED*:  **$206,954.48 plus accrued interest to accrue after the Petition Date**

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest and fees and costs (if any) arising on or before __August 5__, 2026, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C.     The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 5.75%

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☐ Fixed rate    ☒ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D.     Reaffirmation Agreement Repayment Terms *(check and complete one)*:

40626810v1

Form 2400A, Reaffirmation Documents                                      Page 6

☒        Repayment terms: **Borrowers' payment schedule consists of the following: Original Terms of Promissory Note ("Note") - 60 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2022, with an initial interest rate of 5.750% per annum; 179 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2027 with interest calculated on the unpaid principal balances using an interest rate based on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently at 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum; and one principal interest payment of $1,554.51 on September 5, 2042 with interest calculated on the unpaid principal balances using an interest rate based on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently at 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum. Also, the Debtor agrees to pay Renasant an additional sum of $450.00 which will be due at maturity of the Note in order to reimburse Renasant for the reasonable attorney's fees it incurred ($450.00 flat fee) in, *inter alia*, reviewing the Debtor's schedules and statement of intention, notating applicable case deadlines, preparing all of the reaffirmation agreement documents, communicating with Debtor's counsel, and ultimately filing a completed and executed reaffirmation agreement package with the Court.**

THE ORIGINAL TERMS ARE BEING MODIFIED THROUGH THIS AGREEMENT. NOTE IS CURRENTLY PAST DUE $10,884.51 REPRESENTING THE JANUARY 5, 2026, THROUGH JULY 5, 2026 PAYMENTS. TO CURE THE DELINQUENCY THE DEBTOR WILL PAY TWO REGULAR PAYMENTS EACH MONTH BEGINNING WITH THE PAYMENT DUE AUGUST 5, 2026, AND CONCLUDING WITH THE PAYMENT DUE FEBRUARY 5, 2027. REGULAR NOTE PAYMENTS ARE $1,554.93 EACH. THUS, FOR THE PERIOD AUGUST 5, 2026, THROUGH FEBRUARY 5, 2027, THE DEBTOR'S TOTAL MONTHLY OBLIGATION TO RENASANT SHALL BE $3,109.86. ASSUMING THE DEBTOR MAKES TWO PAYMENTS EACH MONTH FOR 7 CONSECUTIVE MONTHS BEGINNING AUGUST 2026, THEN THE DEBTOR'S PAYMENT OBLIGATIONS HEREUNDER SHALL REVERT TO THE NORMAL MONTHLY PAYMENT AMOUNT OF $1,554.93 EFFECTIVE WITH THE MARCH 5, 2027 NOTE PAYMENT. TO THE EXTENT THAT THE INTEREST RATE ON THE NOTE CHANGES DURING THE TERM OF THIS REAFFIRMATION AGREEMENT, THEN THE ACTUAL AMOUNT OF THE NOTE PAYMENT BASED ON ANY ADJUSTMENT IN THE INTEREST RATE SHALL CONTROL. EXISTING LATE FEES ARE BEING DEFERRED AND SHALL BE DUE AT MATURITY, AS WELL AS RENASANT'S REASONABLE ATTORNEY'S FEES AND EXPENSES ASSOCIATED WITH THIS CHAPTER 7 CASE, WHICH THE DEBTOR AGREES WILL BE ADDED TO THE NOTE AND FURTHER AGREES TO PAY SAME UPON MATURITY OF THE NOTE.

☐        Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E.        Describe the collateral, if any, securing the debt: **Real Property located at 440 Old Highway 15 South, Ellisville, MS 39437 and one (1) 2002 Southern Manufactured Home bearing Serial Number #DSEAL15148ABC; Deed of Trust dated September 2, 2022, filed and recorded on October 24, 2022, as Instrument Number 12203584 in the office of the Chancery Clerk of Jones County, Mississippi, First Judicial District**

Current Market Value: **$390,000.00 (Schedule A/B)**

F.        Did the debt that is being reaffirmed arise from the purchase of the collateral described above?
         ☐       Yes.    What was the purchase price for the collateral?

         ☒       No.     What was the amount of the original loan? **$221,310.00**

G.        Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms on Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due | $206,954.48 | **$206,954.48 (plus accrued interest after petition date plus a flat fee of** |

40626810v1

| *(including fees and costs)* | | $450.00 Debtor agrees to pay to reimburse Renasant for attorney's fees associated with the reaffirmation agreement which will be due at maturity and which will not accrue interest) |
|---|---|---|
| Annual Percentage Rate | 5.750% | 5.750% |
| Monthly Payment | $ 1,554.93 - see also section D | $1,554.93 – see also section D |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement.  Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT.

A.    Were you represented by an attorney during the course of negotiating this agreement?

Check One.    ☐ Yes        ☐ No

B.    Is the creditor a credit union?

Check One.    ☐ Yes        ☒ No

C.    If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1.    Your present monthly income and expenses are:

a.    Monthly income from all sources after payroll deductions
(take-home pay plus any other income)                                              _____

b.    Monthly expenses (including all reaffirmed debts, except this one)       _____

c.    Amount available to pay this reaffirmed debt (subtract b. from a.)        _____

d.    Amount of monthly payment required for this reaffirmed debt              _____

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship."  Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2.    You believe this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

Check one of the two statements below, if applicable:

40626810v1

☐    You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

☒    You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
Use additional page if needed for full explanation.
Debtor surrendered a vehicle that was originally on schedule J and will use those funds to make double payments

D.    If your answers to BOTH questions A. and B. were "Yes," check the following statement, if applicable:
☐    You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III.    CERTIFICATION BY DEBTOR AND SIGNATURE OF PARTIES.

I hereby certify that:

(1)    Debtor agrees to reaffirm the debt described above.

(2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)    I have received a copy of this completed and signed Reaffirmation Documents form.

Date  08 / 04 / 2026                     Signature _____
                                                     Chance D. Sims, *Debtor*

Date  _____               Signature _____

## Reaffirmation Agreement Terms Accepted by Creditor:

Creditor  __Renasant Bank_____    329 E. Broadway Avenue
                                                Maryville, TN 37801_____

40626810v1

_____          _____
                                                                 *Address*
**Rick Arp**
*Name of Representative*                          *Signature*

## PART IV.   CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) We have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐      A presumption of undue hardship has been established with respect to this agreement.  In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____ 08/04/2026      Signature of Debtor's Attorney      /s/ Thomas C. Rollins, Jr. _____

                                                  Print Name of Debtor's Attorney      **Thomas Carl Rollins, Jr.** _____

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest.  If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1.      **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay.  Your reaffirmed debt is not discharged in your bankruptcy case.  That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may

40626810v1

Doc ID: 0b311921dad4b2210a87f7615a805fec31a6a050

permit the creditor to change the terms of that agreement in the future under certain conditions.

2.   **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.   **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.   **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.  However, the court may extend the time for filing, even after the 60-day period has ended.

5.   **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled).  Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6.   **When will this Reaffirmation Agreement be effective?**

     a.   **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

          i.   **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship.  If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

          ii.  **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B.   INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtors' Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtors' Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C.   DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that

you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above).  Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure.  You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.      **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law.  The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges.  You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.      **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

40626810v1


### BANK

Date: 3/23/2026
Payoff provided to: Rick Arp
Customer Name: Chance D Sims
Account #    1392-1

Requested Payoff Date: 2/09/2026
**Payoff Amount as of Requested Date: $206,954.48**

Per Diem: $32.11

We are providing this payoff request to you at the request of our customer. Please note:

[X] The above referenced loan **is not** a revolving line of credit*

[ ] The above referenced loan **is** a revolving line of credit* which ordinarily will remain open and eligible for further draws (even if the balance is paid to zero) unless the customer requests termination or the loan is suspended or terminated by the bank. As such, the quoted payoff is subject to change as further draws are made and tender of the payoff balance will not necessarily terminate the revolving line of credit* unless we receive a termination request from the customer in form satisfactory to us. Even if a termination request is received, we will withhold cancellation of our lien on the collateral securing the loan until all obligations under the loan are paid in full.

A detailed breakdown of the Payoff Amount as of __2/9/2026__ is as follows:

| | |
|---|---|
| Principal: | $203,809.16 |
| Interest: | $1,839.12 |
| Fees: | $1,306.20 |
| **Total Payoff:** | **$206,954.48** |

The Payoff Amount can be paid by cash, wire transfer**, certified check or other immediately available funds during normal business hours at any Renasant branch or mailed to the address below:

**Mail Payoff and Termination Request to:**
**Renasant Bank, Attn: Loan Operations/Maintenance**
**PO BOX 4140, Tupelo MS 38803**

**Overnight Address:**
**Renasant Bank, Attn:  Payoff Dept.**
**3618 W Jackson Ext, Tupelo MS  38801**

**Wire Instructions:**
ABA/Routing Number:
Beneficiary Account Number:                      ]
Beneficiary Account Name: Loan Control
Beneficiary Address: 3618 W Jackson Street Ext, Tupelo, MS 38801
For Further Credit: Renasant Customer's Loan Account Number & Customer's Name as it appears on the Account

Payments by mail, Overnight delivery or made at any branch location during normal business hours will be credited on the date of receipt. Payments received after normal business hours will be credited on the next business day. Unless otherwise directed in writing at the time of receipt of payoff, any funds in excess of the amount needed to satisfy the payoff amount will be delivered to the borrower(s).

We assume no responsibility for obtaining a termination request from the customer. If this payoff is requested in connection with a sale of the property securing the loan, or as part of a refinance of the existing indebtedness, the person closing the transaction will be responsible for obtaining such a request. If the payoff quote is requested in connection with such refinancing or sale, or if the intent is otherwise to terminate the revolving line of credit*, please have the customer sign where indicated below and return this letter with the payoff funds to the address shown below

Jacque Fultz
**Renasant Bank**
**Loan Operations**
1-877-367-5371

---

### REVOLVING LINE OF CREDIT TERMINATION

TO: Renasant Bank
Please terminate further advances under the above reference revolving line of credit* account. As a result of this request, I will no longer be eligible for and agree not to make further draws under the revolving line of credit*. I also acknowledge and agree that the agreement establishing the revolving line of credit* will remain in effect until all outstanding obligations are paid, that I will remain responsible for such obligations, and that my collateral will not be released/and or cancelled until such obligations are paid in full.

_____   Date: _____   _____   Date:_____

*Revolving line of credit includes Home Equity Lines of Credit (HELOC) and other open ended, multiple advance type loans.

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

1050011392%0955%09022022%SB05041

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $221,310.00 | 09-02-2022 | 09-05-2042 | 1392 | 1A2 / 411 | SB05041 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CHANCE SIMS
212 CENTRAL AVE
LAUREL, MS 39440-4024

**Lender:** THE FIRST BANK
Laurel Branch
1945 Hwy 15 North
Laurel, MS 39441
(601) 425-4000

**Principal Amount: $221,310.00**                         **Date of Note: September 2, 2022**

PROMISE TO PAY. I ("Borrower") promise to pay to THE FIRST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Twenty-one Thousand Three Hundred Ten & 00/100 Dollars ($221,310.00), together with interest on the unpaid principal balance from September 2, 2022, until paid in full.

PAYMENT. Subject to any payment changes resulting from changes in the index, I will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 60 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2022, with interest calculated on the unpaid principal balances using an initial interest rate of 5.750% per annum; 179 monthly consecutive principal and interest payments in the initial amount of $1,554.93 each, beginning October 5, 2027, with interest calculated on the unpaid principal balances using an interest rate based on the the base rate on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum; and one principal and interest payment of $1,554.51 on September 5, 2042, with interest calculated on the unpaid principal balances using an interest rate based on the the base rate on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (currently 4.750%), plus a margin of 1.000%, resulting in an initial interest rate of 5.750% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

VARIABLE INTEREST RATE. For the first 60 payments, the interest rate on this loan will be 5.750%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the base rate on corporate loans posted by Wall Street Journal at 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell me the current index rate upon my request. The interest rate change will not occur more often than each 12 months. I understand that Lender may make loans based on other rates as well. The index currently is 4.750% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream and will be determined using the most recent index figure available as of 45 days before the date of the scheduled interest rate change. If the index is no longer published to the general public or the administrator of the index or a regulator has issued a public statement that the index is no longer reliable or representative during the term of this Note ("Replacement Event"), then Lender may amend this Note by designating a substantially similar replacement index which shall become the new index on the loan ("Replacement Index"). Lender may also amend and adjust any margin corresponding to the replaced index described in the "Payments" section to accompany the Replacement Index ("Replacement Margin"). The Replacement Margin may be a positive or negative value, or zero. In making these amendments, Lender will make a reasonable, good faith effort to select a Replacement Index and Replacement Margin that Lender reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the index being replaced and the Replacement Index. If the Replacement Index is newly established and therefore does not have a rate history, it may nonetheless be used if it produces an interest rate substantially similar to the rate in effect at the time of the Replacement Event. Such an amendment to the terms of this Note will become effective immediately upon the Replacement Event and will be used to determine my interest rate and monthly payments for interest rate adjustments that are more than 45 days from the Replacement Event. Lender will notify me of the Replacement Index and Replacement Margin as appropriate. After a Replacement Event, all references to the "Index" and any margin corresponding to the index shall be deemed to be references to the "Replacement Index" and "Replacement Margin." NOTICE: Under no circumstances will the interest rate on this Note be less than 5.750% per annum or more than the lesser of 11.750% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

RECEIPT OF PAYMENTS. All payments must be made in U.S. dollars and must be received by Lender at:

THE FIRST BANK
P.O. Box 15549
Hattiesburg, MS 39404

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Central Time on a business day, Lender will credit my payment on the next business day.

PREPAYMENT. I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: THE FIRST BANK, P.O. Box 15549 Hattiesburg, MS 39404.

LATE CHARGE. If my payment is more than 16 days late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

Payment Default. I fail to make any payment when due under this Note.

Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

**PROMISSORY NOTE**
(Continued)

Loan No:      11392                                                                                              Page 2

for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Jones County, State of Mississippi.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $36.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored. In the event Lender is charged a fee or service charge as a result of return of a dishonored payment, Lender may add up to $15.00 of such fee or service charge to the unpaid principal balance.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by a Deed of Trust of even date; I/N/O Chance Sims; I/A/O $221,310; covering 440 Old Highway 15 S. Ellisville, MS 39437 and 2001 Southern Energy Homes Impression Doublewide Mobile Home taken as an abundance of caution; in favor of The First Bank; to be recorded in the public records of Jones County, Mississippi.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
CHANCE SIMS

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
10/24/2022 1:42:41 PM
INST. 12203594 PAGE 1 OF 12
WITNESS MY HAND AND SEAL
BART GAVIN

## CORRECTED DEED OF TRUST



...J92%0340%09022022%########

WHEN RECORDED MAIL TO: THE FIRST BANK, P.O. Box 15549, Hattiesburg, MS 39404, Tel. (601) 268-8998

SEND TAX NOTICES TO: THE FIRST BANK, P.O. Box 15549, Hattiesburg, MS 39404, Tel. (601) 268-8998

This Deed of Trust prepared by: Rebeccah Knapp, TRID Quality Control Specialist, THE FIRST BANK, 1945 Hwy 15 North, Laurel, MS 39441, (601) 268-8998

INDEXING INSTRUCTIONS: A PARCEL OF LAND IN THE NW 1/4 OF NE 1/4, SECTION 4, TOWNSHIP 7 NORTH, RANGE 11 WEST AND IN THE SOUTH 1/2 OF THE SE 1/4 OF SECTION 33, TOWNSHIP 8 NORTH, RANGE 11 WEST, FIRST JUDICIAL DISTRICT, JONES COUNTY, MISSISSIPPI.

FOR RECORDER'S USE ONLY

## DEED OF TRUST

GRANTOR:  CHANCE SIMS, 212 CENTRAL AVE, LAUREL, MS 39440-4024, Tel. (601) 498-1309

LENDER / BENEFICIARY:  THE FIRST BANK, Laurel Branch, 1945 Hwy 15 North, Laurel, MS 39441, Tel. (601) 425-4000

TRUSTEE:  Terry L. Caves, P.O. Box 167, Laurel, MS 39441, Tel. (601) 408-0402

MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $221,310.00.

THIS DEED OF TRUST is dated September 2, 2022, among CHANCE SIMS, a single man, whose address is 212 CENTRAL AVE, LAUREL, MS 39440 ("Grantor"); THE FIRST BANK (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Terry L. Caves (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee for the benefit of Lender as Beneficiary, with power of sale, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in JONES County, State of Mississippi:

See Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 440 OLD HIGHWAY 15 S, ELLISVILLE, MS 39437-4479. The Real Property tax identification number is 079-04-00-001.01.

CROSS-COLLATERALIZATION. In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

## DEED OF TRUST
Loan No:                    (Continued)                      Page 2

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

Instrument # 12203584
Page 3 of 12

## DEED OF TRUST
(Continued)

Loan No:          )                                                      Page 3

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Mississippi law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least forty-five (45) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

## DEED OF TRUST
Loan No:                  (Continued)                  Page 4

balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

TAX AND INSURANCE RESERVES. Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. If Lender discovers that the payments into the reserve account have produced a surplus beyond the annual amounts due to be paid from the reserve funds by more than the cushion permitted by applicable law, but a payment on the Note has not been received within 30 days of the payment due date, Lender may retain the excess funds. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

LENDER'S EXPENDITURES. If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 5 of 12

**DEED OF TRUST**

Loan No:                                                                  **(Continued)**                                                             Page 5

of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 6 of 12

## DEED OF TRUST
## (Continued)

Loan No:                                                                                          Page 6

Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein,

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 7 of 12

**DEED OF TRUST**
**(Continued)**

Loan No:                                                        Page 7

including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Sale of Property.** Grantor waives the provisions of Section 89-1-55, Mississippi Code of 1972, as amended, and any successor provisions, as far as said Section restricts the right of Trustee to offer at sale more than one hundred and sixty acres at a time, and Trustee may offer the Property as a whole or in part and in such order as the Trustee may deem best, regardless of the manner in which it may be described.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall, at the request of Lender, sell the Real Property after giving notice of the time, place and terms of sale as required by Section 89-1-55 of the Mississippi Code of 1972, as amended, and any successor provisions, and execute a deed to the purchaser of the Real Property. Out of the proceeds arising from the sale, the costs and expenses of executing this Deed of Trust, including a reasonable Trustee's fee and the attorneys' fees prescribed in the Note or in this Deed of Trust, shall first be paid; next the amount of the Indebtedness then remaining unpaid shall be paid; and, lastly, any balance remaining shall be paid to Grantor or to Grantor's representatives agents or assigns.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 8 of 12

## DEED OF TRUST
Loan No:                                    **(Continued)**                                    Page 8

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of JONES County, State of Mississippi. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

NOTICES. Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 9 of 12

## DEED OF TRUST
### (Continued)

Loan No:⁻                                       Page 9

effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Mississippi.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Jones County, State of Mississippi.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Mississippi as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means THE FIRST BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means CHANCE SIMS and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6601, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means CHANCE SIMS.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 10 of 12

## DEED OF TRUST
Loan No:                                    (Continued)                                    Page 10

accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means THE FIRST BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated September 2, 2022, in the original principal amount of $221,310.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is September 5, 2042. NOTICE TO GRANTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Terry L. Caves, whose address is P.O. Box 167, Laurel, MS 39441 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
**CHANCE SIMS**

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

**DEED OF TRUST**
**(Continued)**

Loan No

Page 11

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __MS__ )
                       ) SS
COUNTY OF __Jones__ )

This record was acknowledged before me on the ___30th___ day of __September__, 20__22__ by CHANCE SIMS.

_____
NOTARY PUBLIC

My Commission Expires:
__3-16-26__

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 290279
MIRANDA BLACK
Commission Expires
March 16, 2026
JONES COUNTY

LaserPro, Ver. 21.4.0.034 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - MS
C:\Harland\CFI\LPL\G01.FC TR-70024 PR-163

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

Instrument # 12203584
Page 12 of 12

# EXHIBIT "A"
### (Legal Description)

Beginning at a 3/8" iron pin found at the NE Corner of Section 4, Township 7 North, Range 11 West, First Judicial District, Jones County, Mississippi, thence run on and along East line of Section 33, Township 8 North, Range 11 West North for 60.00 feet to a set iron pin, thence leaving East line of Section 33 run South 89 degrees 59 minutes 17 seconds West for 2644.75 feet to a set iron pin, thence run South 00 degrees 05 minutes 47 seconds West for 60.00 feet to an iron pin set at the NW Corner of the NW ¼ of the NE ¼ of Section 4, Township 7 North, Range 11 West, thence run on and along the North line of the NE ¼ of the NW ¼ of Section 4, Township 7 North, Range 11 West, South 89 degrees 58 minutes 58 seconds West for 1324.70 feet to a ½" rebar found at the NW Corner of the NE ¼ of the NW ¼ of Section 4, Township 7 North, Range 11 West, thence run on and along the West line of said forty South 00 degrees 27 minutes 05 seconds East for 1408.05 feet to a ½" rebar found at the SW Corner of said forty, thence run on and along the South line of the NE ¼ of the NW ¼ and the NW ¼ of the NE ¼ North 89 degrees 45 minutes 46 seconds East for 2639.55 feet to a concrete marker found at the SE Corner of the NW ¼ of the NE ¼ of Section 4, Township 7 North, Range 11 West, thence run on and along the East line of the NW ¼ of the NE ¼ of Section 4, Township 7 North, Range 11 West North 00 degrees 02 minutes 59 seconds West for 1397.88 feet to a concrete marker found at the NE Corner of said forty, thence run on and along the North line of Section 4, Township 7 North, Range 11 West North 89 degrees 59 minutes 37 seconds East for 1320.14 feet back to the Point of Beginning. Said parcel of land is a part of the NW ¼ of the NE ¼ and also a part of the NE ¼ of the NW ¼ of Section 4, Township 7 North, Range 11 West, and is also a part of the South ½ of the SE ¼ of Section 33, Township 8 North, Range 11 West, First Judicial District, Jones County, Mississippi.

AND ALSO A PERMANENT AND PERPETUAL RIGHT OF WAY EASEMENT:

Beginning at a 3/8" iron pin found at the NE Corner of Section 4, Township 7 North, Range 11 West, First Judicial District, Jones County, Mississippi, thence run on and along East line of Section 33, Township 8 North, Range 11 West North for 60.00 feet to a set iron pin, thence leaving East line of Section 33 run South 89 degrees 59 minutes 17 seconds West for 2644.75 feet to a set iron pin, thence run South 00 degrees 05 minutes 47 seconds West for 60.00 feet to an iron pin set at the NW Corner of the NW ¼ of the NE ¼ of Section 4, Township 7 North, Range 11 West, thence run East along the North line of the NE ¼ of Section 4, Township 7 North, Range 11 West back to the point of beginning.

LESS AND EXCEPT:

Commence at a 3/8 inch rebar with cap (6 inches below grade in Frank Aplin Road) marking the Northeast corner of Section 4, Township 7 North, Range 11 West, First Judicial District, Jones County, Mississippi and run North 00 degrees 01 minutes 19 seconds East along the East line of the SE ¼ of the SE ¼ of Section 33, Township 8 North, Range 11 West for 30.00 feet to a ½ inch rebar for the

Point of Beginning; thence run South 89 degrees 59 minutes 17 seconds West for 2569.50 feet to a ½ inch rebar; thence run South 00 degrees 02 minutes 20 seconds West for 100.00 feet to a ½ inch rebar; thence run South 09 degrees 20 minutes 00 seconds West for 50.00 feet to a ½ inch rebar; thence run South 74 degrees 36 minutes 12 seconds West for 240.49 feet to a ½ inch rebar; thence run South 00 degrees 10 minutes 00 seconds East for 1221.19 feet to a ½ inch rebar; thence run South 89 degrees 45 minutes 46 seconds West along the South line of the NE ¼ of the NW ¼ of said Section 4 for 1152.41 feet to a ½ inch rebar marking the SW corner of the NE ¼ of the NW ¼ of said Section 4; thence run North 00 degrees 27 minutes 05 seconds West along the West line of said NE ¼ of the NW ¼ for 1408.05 feet to a ½ inch rebar marking the Northwest corner of said NE ¼ of the NW ¼; thence run North 89 degrees 58 minutes 58 seconds East along the North line of said NE ¼ of the NW ¼ for 1324.70 feet to a ½ inch rebar marking the NW Corner of the NW ¼ of the NE ¼ of said Section 4; thence run North 00 degrees 02 minutes 20 seconds East along the West line of the SW ¼ of the SE ¼ of said Section 33 for 60.73 feet to a ½ inch rebar; thence run North 89 degrees 59 minutes 17 seconds East for 2644.75 feet to a ½ inch rebar; thence run South 00 degrees 01 minutes 19 seconds West along the East line of the SE ¼ of the SE ¼ of said Section 33 for 30.00 feet back to the Point of Beginning. Said parcel is a part of the NE ¼ of the NW ¼ and the NW ¼ of the NE ¼ of Section 4, Township 7 North, Range 11 West, and also a part of the SW ¼ of the SE ¼ and the SE ¼ of the SE ¼ of Section 33, Township 8 North, Range 11 West, all being in the First Judicial District, Jones County, Mississippi.

JONES COUNTY, MS, BART GAVIN
I CERTIFY THIS INSTRUMENT WAS FILED ON 10/24/2022 1:42:41 PM AND RECORDED IN GENERAL BOOK#0122 PAGE#3584

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| DSEAL15148ABC | SOUT | 2002 | FX3 | HS | MS1601401086 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER NO TENTHS |
|---|---|---|---|---|---|
| 10/14/2022 | | | USED | MH | EXEMPT |

BRANDS

OWNER(S)

SIMS, CHANCE
212 CENTRAL AVE
LAUREL MS 39440-4024

BENEFICIARY

1ST LIENHOLDER
THE FIRST BANK
6480 U S HIGHWAY 98
HATTIESBURG MS 39402-8417

DATE: 08/30/2022

2ND LIENHOLDER

DATE:

**ORIGINAL**

MAIL TO

THE FIRST BANK
PO BOX 15549
HATTIESBURG MS 39404-5549

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREIN HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
(LIENHOLDER) (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

2ND LIEN _____ BY _____
(LIENHOLDER) (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 14TH DAY OF OCTOBER 20 22

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be set forth with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1 Mississippi Code of 1972 and subject to the provisions thereof.

CONTROL NUMBER

O 04265068

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**

Doc ID: a2a4a50b85148d7d07c49c6d821fa5350153dddf

# CERTIFICATE OF TITLE

Form # 78-101

## STATE OF MISSISSIPPI

## REPLACEMENT

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| DSEAL15148ABC | SOUT | 2002 | FX3 | HS | MS1995460864 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS | |
|---|---|---|---|---|---|---|
| 08/18/2022 | 10/01/2002 | | NEW | MH | | EXEMPT |

**OWNER(S)**

BONNIE RAY&MARIAN SIMS JR
442 LOWER MYRICK RD
LAUREL MS 39443

**BENEFICIARY**

**BRANDS**

**1ST LIENHOLDER**
COMMUNITY BANK OF MISSISSIPPI
909 N 16TH AVE
LAUREL MS 39440-3363

**DATE:** 10/01/2002

**2ND LIENHOLDER**

**DATE:**

**MAIL TO**

COMMUNITY BANK OF MISSISSIPPI
PO BOX 265
LAUREL   MS 39441-0265

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN Community Bank of Mississippi (LIENHOLDER) BY _____ (SIGNATURE AND TITLE)

THIS 25th DAY OF August 20 22

2ND LIEN _____ (LIENHOLDER) BY _____ (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20__

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 18TH DAY OF AUGUST 20 22

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972 and subject to the provisions thereof.

CONTROL NUMBER

R 0027A790

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**